IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BENJAMIN FORTUNE,<br><br>     Plaintiff,<br><br>v.<br><br>TECHTRONIC INDUSTRIES NORTH AMERICA, et al.,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:13-CV-813 TS<br><br>District Judge Ted Stewart |

   This matter is before the Court on Defendants' Motion for Summary Judgment.[1] The Court will grant Defendant's Motion based on the reasons discussed below.

## I.  BACKGROUND

   On or about November 26, 2012, Plaintiff Benjamin Fortune ("Plaintiff") was injured while using a Ryobi brand table saw, Model No. BTS21, Serial No. X08430026 (the "Ryobi Saw"). The Ryobi Saw was manufactured in 2008 and came with a 3-in-1 blade guard assembly ("BGA"), consisting of: (1) a "see thru" plastic hood designed to prevent inadvertent contact with the blade; (2) a sheet metal splitter knife designed to prevent kickback; and (3) spring-loaded anti-kickback pawls.[2] At the time of the accident, Plaintiff had in place the BGA.

   As Plaintiff was making a "rip cut," or a type of "through cut," into a 2x4 piece of clear pine wood approximately 30 inches in length, the saw began to chatter and vibrate. Fearing the possibility of a "kickback," or an event where the wood is thrown back at the operator, Plaintiff

---

[1] Docket No. 20.

[2] Docket No. 23 Ex. B(1), at 8.

held down the left side of the board with his left hand and placed "down pressure and forward pressure"[3] to prevent the board from kicking back. Before Plaintiff could turn off the machine, a kickback occurred. The board split apart. The piece on the right side of the blade kicked back and the piece on the left side of the blade "went up, and the bottom kicked out and . . . broke the guard."[4] Plaintiff's left hand went forward into the blade.

Plaintiff filed suit against One World Technologies, Ryobi Technologies, and Techtronic Industries North America ("Defendants") on September 3, 2013. In his Complaint, Plaintiff makes four liability claims against Defendants under: (1) strict product liability; (2) negligence; (3) breach of implied warranty of fitness; and (4) breach of implied warranty of merchantability. Defendants moved for summary judgment on December 15, 2014. In his Opposition to Defendants' Motion for Summary Judgment, Plaintiff dismissed claims three and four, leaving only his claims under strict liability and negligence for discussion.[5] Each will be addressed in turn.

## II.   DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[3] Docket No. 20 Ex. D.

[4] *Id.*

[5] Docket No. 23, at 45.

[6] Fed. R. Civ. P. 56(a).

presented.[7]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[8]

A.  STRICT PRODUCT LIABILITY

Under Utah law, the plaintiff in a products liability action for design defect must show: "(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries."[9]  A design defect or a defective condition exists if the defect "made the product unreasonably dangerous to the user or consumer."[10]  The term "unreasonably dangerous" is defined by statute.  Under Utah Code Ann. § 78B-6-702, "unreasonably dangerous" means that the product was

> dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer.[11]

The Tenth Circuit has read this language as encompassing an objective consumer expectations test supplemented with a subjective test based on "individual knowledge, training, and experience of the particular buyer."[12]  The individual information works against the plaintiff because it heightens the extent of perceived danger beyond what would be contemplated by the

---

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[8] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[9] *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1279 (10th Cir. 2003).

[10] Utah Code Ann. § 78B-6-703.

[11] *Id.* § 78B-6-702.

[12] *Brown*, 328 F.3d at 1282.

ordinary and prudent buyer.[13]  Thus, if a product is not unreasonably dangerous under the objective consumer expectations test, it is unnecessary to consider the subjective information.[14]

Furthermore, Utah law establishes a statutory presumption of nondefectiveness when the product conforms to government standards in existence at the time the product was designed or manufactured.[15]  That presumption can be rebutted by a preponderance of evidence that the product was unreasonably dangerous.[16]  In interpreting Utah law, the Tenth Circuit has required the evidence show both that an ordinary consumer would not have appreciated the danger posed by the product and that an "alternative, safer design, practicable under the circumstances" was available at the time the product was sold.[17]

In seeking summary judgment, Defendants bear the initial burden of demonstrating the absence of a genuine issue of material fact, and that they are entitled to judgment as a matter of law.  In their Motion, Defendants argue that the Ryobi Saw was not unreasonably dangerous within the meaning of Utah Code Ann. § 78B-6-702.  Defendants state that the Ryobi Saw was designed and manufactured in full accordance with all relevant private industry consensus standards and government standards.  Further, Defendants argue that, at the time the Ryobi Saw was manufactured and sold, no technologically feasible, safer alternative design was available.

Plaintiff claims that the Ryobi Saw was defectively designed because the BGA inadequately prevented blade contact and lacked flesh detection technology as a fail-safe feature.

---

[13] *Id.*

[14] *Id.*

[15] Utah Code Ann. § 78B-6-703(2).

[16] *Egbert v. Nissan N. Am., Inc.*, 167 P.3d 1058, 1059 (Utah 2007).

[17] *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1479 (10th Cir. 1993), *see also Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003); *Brown*, 328 F.3d at 1279.

Plaintiff contends that even while using the BGA, Plaintiff's hand still made contact with the blade. He argues that the ordinary consumer would not expect to make contact with the blade when using the guard, and that the lack of flesh detection technology rendered the product unreasonably dangerous.

Both parties, however, agree that the Ryobi Saw conformed with all standards applicable to table saws as promulgated by the American National Standards Institute ("ANSI") in conjunction with Underwriters Laboratories ("UL") and contained the written warnings required by the Consumer Product Safety Commission at the time it was manufactured.[18] Furthermore, the BGA was mandated by UL Standard 987 and by OSHA regulations, and certified and approved by UL prior to its initial distribution.[19] Thus, a presumption of nondefectiveness arises. Plaintiff must present a preponderance of evidence showing that the product was unreasonably dangerous within the meaning of Utah Code Ann. § 78B-6-702 and that a safer alternative design was available at the time the product was manufactured.[20]

Under the objective consumer expectations test of Utah Code Ann. § 78B-6-702, a product is unreasonably dangerous if "the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer . . . considering the product's characteristics, propensities, risks, dangers and uses . . . ."[21] "The issue, roughly speaking, is whether an ordinary person would think the product is less dangerous than it is."[22] In *Brown v.*

---

[18] Docket No. 20 Ex. H, at 4.

[19] *Id.*

[20] *Brown*, 328 F.3d at 1279–80.

[21] Utah Code Ann. § 78B-6-702

[22] *Brown*, 328 F.3d at 1280.

5

*Sears, Roebuck & Company*, the Tenth Circuit held that the defendant must prevail against a strict product liability claim where a plaintiff's evidence fails to satisfy the objective test.  In that case, the plaintiff's two-year-old son suffered severe injuries after being backed over by a lawnmower.  The plaintiff argued that the lawnmower could have been equipped with a safety feature that prevents operators from traveling in reverse with the mower blades engaged.  However, the Tenth Circuit held that under Utah law, the plaintiff must first establish that the mower was unreasonably dangerous under the objective consumer expectations test.[23]  The court held that "an ordinary and prudent user of the mower would have appreciated the danger arising from the operation of the mower blades while the tractor was moving in reverse."[24]  Without evidence to the contrary, the plaintiff's claim failed under the objective consumer expectations test and could not prevail on her claim of strict products liability.[25]

      Here, Plaintiff argues that the Ryobi Saw was unreasonably dangerous because the "ordinary consumer is not going to expect that he will make contact with the blade when he is using the guard."[26]  Nonetheless, an ordinary consumer would have appreciated the danger of a table saw's rotating blade.  That the guard broke during a violent kickback and could not serve as a barrier between the user and the rotating blade does not establish that the product was

---

[23] *Id*. at 1279.

[24] *Id*. at 1283.

[25] *Id*.

[26] Docket No. 23, at 30.

unreasonably dangerous. "[T]he fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put into its intended use."[27]

According to Plaintiff's expert witness, Darryl Robert Holt ("Mr. Holt"), kickback events can occur for a variety of reasons, including improper work piece maneuvering, the condition of the wood, and misalignment of equipment, among other factors.[28] As such, risk of kickbacks cannot be completely eliminated. The Ryobi Saw came with written warnings and instructions regarding risk of kickbacks and the importance of keeping hands away from the rotating blade. Moreover, Plaintiff testifies to having read and understood the instructions. Plaintiff fails to provide evidence showing that the ordinary consumer would not have appreciated the danger of the Ryobi Saw or would have believed the Ryobi Saw to be less dangerous than it actually is. Thus, because Plaintiff could not "overcome the barrier posed by [section 702],"[29] the Court need not reach the issue of the practicability of a safer alternative design and will grant summary judgment on Plaintiff's strict product liability claim.

B. NEGLIGENCE

To establish a claim of negligence, there must be a duty of reasonable care owed by the defendant to the plaintiff and a breach of that duty. Under Utah law, ascertaining whether a duty of reasonable care exists requires considering the following factors: "(1) the extent that the manufacturer could foresee that its actions would cause harm; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against it; and (4) the consequences of placing the burden

---

[27] *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah Ct. App. 1994) (quoting *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So.2d 1328, 1332 (Ala. (1991)).

[28] Docket No. 23 Ex. B(1), at 7.

[29] *Brown*, 328 F.3d at 1279.

on the defendant."[30] Utah courts have refused to recognize a duty "to refrain from marketing a non-defective product when a safer model is available."[31] "In so holding, the court[s] clearly [use] the same meaning of 'defective' as in strict liability claims."[32] Thus, the disposition of a strict product liability claim under design defect leads to the disposition of the negligence claim. Accordingly, the Court will also grant summary judgment on Plaintiff's negligence claim.

### III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 20) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff, and close this case forthwith.

DATED this 11th day of May, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[30] *Slisze v. Stanley-Bostitch*, 979 P.2d 317, 320 (Utah 1999) (quoting *AMS Salt Indus. v. Magnesium Corp. of Am.*, 942 P.2d 315, 321 (Utah 1997)).

[31] *Brown*, 328 F.3d at 1283.

[32] *Id.*